IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RONNIE DAVENPORT,
     Petitioner,

vs.                          Case No.: 3:04cv290/MCR/EMT

JAMES R. McDONOUGH,[1]
     Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

     This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 11).  Petitioner filed a reply (Doc. 14).

     The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

     The procedural background of this case is undisputed by the parties and established by the state court record.  Following a jury trial in the Circuit Court for Escambia County, Florida, Petitioner was convicted as charged in a second amended information of robbery without a weapon and threatening to retaliate against a witness, victim, or informant (Doc. 11, Ex. A at 112).  He was

_____

[1]James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

sentenced on April 28, 1999, as a prison releasee reoffender to a fifteen-year mandatory term of incarceration, with credit for one year and 120 days of jail credit, on the robbery charge, and a consecutive term of 39.8 months of incarceration on the threat to retaliate charge (Doc. 11, Ex. B at 197-202).  Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal (First DCA), and the appellate court affirmed per curiam on April 7, 2000, with the mandate issuing June 1, 2000 (Doc. 11, Exs. E-Q).  Davenport v. State, 763 So. 2d 1204 (Fla. 1st DCA Apr. 7, 2000).

On February 20, 2001, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 11, Ex. S at 1-15).  The motion was denied on June 24, 2002 (id. at 21-25).  Petitioner was granted leave to file a belated appeal of the order (id. at 71-72).  Davenport v. State, 844 So. 2d 756 (Fla. 1st DCA May 9, 2003).  On April 6, 2004, the First DCA affirmed the decision denying post-conviction relief, with the mandate issuing May 4, 2004 (Doc. 11, Ex. V).  Davenport v. State, 871 So. 2d 878 (Fla. 1st DCA Apr. 6, 2004) (Table).

Petitioner filed the instant habeas action on August 17, 2004 (Doc. 1 at 13).  Respondent concedes that the petition is timely and that Petitioner exhausted or technically exhausted his state court remedies as to each of his claims (Doc. 11 at 2).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254 now provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
        (1)     resulted in a decision that was contrary to, or involved an

> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in

Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test

in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied - the state court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

Id., 529 U.S. at 412-13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119-20, 147 L. Ed.

2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any

issue raised in a federal habeas petition upon which there has been an adjudication on the merits in

a formal state court proceeding.  See Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002);

Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002).  First, the court must ascertain the

controlling legal principles that are clearly established by the Supreme Court at the time of the state

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the
Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529
U.S. at 367-375, 390-399, 120 S.Ct. at 1499-1503, 1511-1516); and Justice O'Connor for the Court (joined by Justices
Rehnquist, Kennedy, Thomas, and --except as to the footnote – Scalia) in part II (529 U.S. at 403-413, 120 S.Ct. at 1518-
1523).  The opinion of Justice Stevens in Part II was joined by Souter, Ginsburg, and Breyer.

court adjudication.  Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343.  Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law.  Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344.  "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent."  Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)).  "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404-06).  If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority."  Fugate, 261 F.3d at 1216.  Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law."  Id. (citing and quoting Williams, 529 U.S. at 406).  A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 410.  The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'"  Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting

Williams, 529 U.S. at 411).  Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003).  A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389.  "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted).  Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence."  Section 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." (dictum)); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); see also Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations).  Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. See Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida

Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

_____

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
          (A)  the applicant has exhausted the remedies available in the courts of the State; or
          (B) (i)  there is an absence of available State corrective process; or
              (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. In <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. *Id.* 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." <u>Anderson</u>, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364. The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." <u>Duncan</u>, 513 U.S. at 365-66. Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the

---

[4]The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

case, that does so." <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).
The <u>Baldwin</u> Court commented that "a litigant wishing to raise a federal issue can easily indicate
the federal law basis for his claim in a state-court petition or brief, for example, by citing in
conjunction with the claim the federal source of law on which he relies or a case deciding such a
claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  With regard to this
statement, the Eleventh Circuit stated in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for
> petitioners seeking to establish exhaustion.  However, we agree with the district court
> that this language must be "applied with common sense and in light of the purpose
> underlying the exhaustion requirement[:] 'to afford the state courts a meaningful
> opportunity to consider allegations of legal error without interference from the
> federal judiciary.'"<u>McNair</u> [v. Campbell], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez
> v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This
> is consistent with settled law established by the Supreme Court. . . . We therefore
> hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than
> scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

An issue that was not properly presented to the state court and which can no longer be
litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred
from federal review.  <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also
consider a claim procedurally defaulted if it was presented in state court and rejected on the
independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501
U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>,
269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted
under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324,
1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even
as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206,

---

[5]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation
containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by
the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and
Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  <u>McNair v.
Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient
to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the
federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.*. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of

---

[6]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS[7]

A.    Ground one:  Petitioner's conviction and sentence as to Count I violates the due process protections of the Fifth and Fourteenth Amendments.

Ground two:  Petitioner's enhanced sentence violates the due process protections of the Fifth and Fourteenth Amendments.

Ground three:  Petitioner's convictions on Counts I and II were obtained in violation of the Fifth and Fourteenth Amendments.

(Doc. 1 at 4-5).  In Ground one, Petitioner contends there was insufficient evidence to support the robbery charge (*id.* at 4, 4A).  In Ground two, he argues that the sentencing court erred in imposing an enhanced sentence under the Prison Releasee Reoffender Punishment Act (PRRPA) because his sentence for one of his prior convictions was erroneous (*id.* at 4, 4A, 4B).  In Ground three, Petitioner contends that the trial court erred by improperly joining Counts I and II for trial (*id.* at 5, 5A).

1.    Clearly Established Federal Law

As summarized in Bailey v. Nagle, 172 F.3d 1299 (11th Cir. 1999), a state habeas petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, or

---

[7]Petitioner's claims have been consolidated for organizational purposes.

that a fundamental miscarriage of justice will result.  Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).  A state court decision based on state law grounds that are independent of federal law and adequate to support the judgment may create a procedural default barring federal habeas review.  Coleman, 501 U.S. at 729.  Thus, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the federal claims are barred, the federal court shall respect that decision.  Nagle, 172 F.3d 1299 (citing Atkins v. Singletary, 965 F.2d 952, 956 (11th Cir. 1992)).  In reviewing the state court's judgment, this court must ask whether the last state court to consider the claim(s) clearly and expressly stated that its judgment rested on a procedural bar, meaning, an adequate and independent state ground.  Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  Furthermore, an appellate court's per curiam affirmance of a decision that is based on a procedural bar is deemed to affirm the procedural bar.  Yist v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991); Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990).

To establish "cause" sufficient to overcome the procedural bar, Petitioner must show the existence of "an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim" which prevented him from raising the claim.  McCleskey, 499 U.S. at 497 (quoting Murray, 477 U.S. at 488).   In order to show prejudice, Petitioner must show not merely that the error created a possibility of prejudice, but that it worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions.  See United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982).

## 2.      Federal Review of State Court Proceedings

Petitioner raised the instant claims as Grounds one, three, and four in his Rule 3.850 motion (Doc. 11, Ex. S at 4-7).  The trial court determined that the claims were procedurally barred because Petitioner should have raised them on direct appeal but did not (id. at 21-22).  In reaching this conclusion, the court relied upon Montana v. State, where the Florida First DCA held that issues raised in a Rule 3.850 motion that could have been raised on direct appeal are procedurally barred. 597 So. 2d 334 (Fla. 1st DCA 1992).  The First DCA affirmed per curiam the trial court's denial of

these claims (Doc. 11, Ex. V). <u>Davenport v. State</u>, 871 So. 2d 878 (Fla. 1st DCA Apr. 6, 2004) (Table).

> A review of Petitioner's brief on direct appeal shows that he raised the following issues:
>
> <u>Issue I</u>
> Section 775.082 of the Florida Statutes, known as the Prison Releasee Reoffender Law, is an unconstitutional act of the Legislature because it delegates judicial sentencing power to the state attorney, in violation of Article II, Section 3 of the Florida Constitution.
>
> <u>Issue II</u>
> By including multiple unrelated subjects in one act the legislation which became the Prison Releasee Reoffender Law violated Article III, Section 6, of the Florida Constitution.

(Doc. 11, Ex. E). Petitioner filed a Motion to Discharge Appellate Counsel or, in the Alternative, to File Supplemental Pro Se Brief (Doc. 11, Ex. K). Petitioner's appellate counsel subsequently filed a motion to withdraw from representation, and the appellate court granted counsel's motion (Doc. 11, Exs. L, M). Although Petitioner sought leave from the appellate court to file a supplemental pro se brief, his motion was denied (Doc. 11, Exs. K, N, O, P).

Initially, the trial court correctly applied the procedural default principle set forth in <u>Montana</u>. Florida law provides that a criminal defendant may directly appeal the issues of insufficiency of the evidence, *see* <u>Green v. State</u>, 742 So. 2d 487 (Fla. 1st DCA 1999), errors in imposing sentence enhancements, *see* <u>Durden v. State</u>, 743 So. 2d 77 (Fla. 1st DCA 1999), and improper joinder of offenses, *see* <u>Garcia v. State</u>, 568 So. 2d 896 (Fla. 1990). Furthermore, Florida courts consistently apply the procedural rule that issues that could or should have been raised on direct appeal are procedurally barred from collateral review. Therefore, Petitioner procedurally defaulted Grounds one, two, and three of the instant petition.

In his reply to Respondent's answer, Petitioner's only assertion regarding eligibility for an exception to the procedural bar is that "substantial prejudice" and a miscarriage of justice would result if this court failed to review his claim regarding improper joinder of the offenses (Doc. 14 at 2-3). However, to be eligible for review under the cause and prejudice exception, Petitioner must establish both cause and prejudice. In the instant case, Petitioner does not allege cause for his failure to raise the joinder issue on appeal. Furthermore, Petitioner has failed to establish a fundamental

miscarriage of justice through a colorable showing of actual innocence.  Although he argues that improper joinder of the offenses allowed the jury to infer his guilt of the robbery charge from the evidence submitted in support of the threat to retaliate charge, thus improperly shifting the burden of proof on the robbery charge to Petitioner, this does not satisfy the requisite showing of factual innocence necessary to obtain review through the fundamental miscarriage of justice exception, as Petitioner does not allege the existence of new evidence that was not presented at trial.  *See* Schlup, 513 U.S. at 327; *see also* House v. Bell, --- U.S. ---, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).  As Petitioner is no longer able to present his first three claims to the state courts, and he has failed to show the requisite cause to excuse his procedural default or satisfy the fundamental miscarriage of justice exception to the procedural bar, these three claims are barred from federal habeas review.

     B.    Ground four:  Ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments.

     Petitioner claims that his trial counsel failed to properly investigate his prior sentence in case number 92-5770 to determine whether it qualified him for enhanced sentencing under the PRRPA in the instant case.  He states that if counsel had reviewed the sentence scoresheet for his conviction in case number 92-5770, counsel would have discovered a miscalculation that erroneously placed Petitioner in a higher sentencing range, resulting in his being sent to prison in that case.  Petitioner's release from prison within three years from the date of commission of the robbery in the instant case was the basis for imposition of the PRRPA sentence enhancement (Doc. 1 at 5, 5B).

     1.    Clearly Established Supreme Court Law

     The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687-88.  "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  Strickland, 466 U.S. at 697.  Thus, this court need not address the prejudice

prong if the court determines that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S. Ct. 2104, 158 L. Ed. 2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." (citation omitted)).

> Trying cases is no exact science. And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach. When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993). Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); Chandler, 218 F.3d at 1313 (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

However, not every strategic decision passes constitutional muster. Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462. In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high.  Wellington, 314 F.3d at 1260.  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693-94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405-406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.  Strickland, 466 U.S. at 694-95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695-96.

> 2.      Federal Review of State Court Decision

Petitioner presented this claim as his fifth ground for relief in his Rule 3.850 motion (Doc. 11, Ex. S at 8-9).  The state court denied Petitioner's claim on the grounds that Petitioner failed to show that he informed his counsel of the alleged error in scoring the sentence for his previous conviction in case number 92-5770, or that counsel otherwise had any reason to investigate the accuracy of the sentence scoresheet in the previous conviction (*id.* at 23).  Furthermore, the state court determined that even if counsel had discovered the alleged error, any challenge to the previous sentence would have been untimely (*id.*).

The state court record establishes that at Petitioner's sentencing hearing in the instant case, defense counsel contested the factual basis for imposition of a PRRPA sentence (Doc. 11, Ex. A at 119, 124-25).  The record shows that when the sentencing court inquired of defense counsel whether he wished to offer evidence in support of his dispute of the factual basis for the enhanced sentence, defense counsel conferred with Petitioner and then stated that he had no evidence to present (*id.* at 129-30).  Petitioner has offered no factual support for his assertion that his prior convictions were improperly scored in case number 92-5770.  In his Rule 3.850 motion, Petitioner argued that the scoresheet in case number 92-5770 incorrectly scored his prior conviction for burglary in case number 88-218 as a second degree felony, instead of a third degree felony (Doc. 11, Ex. S at 8-9).  Petitioner states the initial charge in case number 88-218 was burglary without a weapon, a second degree felony, but he entered a plea to simple burglary, a third degree felony (*id.*).  Petitioner's assertion is refuted by the state court record.  A certified copy of the court docket and the charging document in case number 88-218 was submitted at Petitioner's sentencing in the instant case (Doc. 11, Ex. A at 151-54).  The charging document shows that Petitioner was charged in Counts Two, Four, Five, and Six with grand theft, armed burglary, possession of a firearm by a convicted felon, and resisting arrest without violence, respectively (*id*. at 153).  The docket shows that Petitioner pleaded nolo contendere to three charges, burglary with a weapon not a firearm, grand theft, and resisting arrest without violence, and the remaining charge was not prosecuted (*id*. at 152-53).  According to Florida law at the time of Petitioner's sentencing in case number 88-218, the crime of burglary with a weapon was classified as a first degree felony.  Fla. Stat. § 810.02(2) (1983).  Petitioner failed to offer any factual support for his contention that the burglary charge was reduced to simple burglary, a third degree felony; therefore, the state court correctly concluded that defense

counsel had no reason to suspect the sentence miscalculation alleged by Petitioner.  Because Petitioner has failed to show that defense counsel had a reasonable basis for challenging the PRRPA designation on the ground that Petitioner's sentence in case number 88-218 was improperly scored on the sentence scoresheet for case number 92-5770, Petitioner failed to establish that his counsel performed deficiently.  Therefore, the state court's conclusion that Petitioner failed to show that his counsel performed unreasonably was not contrary to or an unreasonable application of the standard set forth in Strickland.  Accordingly, Petitioner is not entitled to relief on this claim.

      C.     Ground five: Ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments.

     Petitioner claims that his trial counsel failed to seek pre-trial suppression of an edited version of the surveillance video from the robbery (Doc. 1 at 6).  Petitioner states that the excerpts were misleading, and if the jury had seen the entire video, they would have known "what actually transpired between the petitioner and the victim," and this would have refuted the State's case (*id*.).

      1.     Clearly Established Supreme Court Law

     The standard for evaluating claims of ineffective assistance of counsel was set forth *supra*.

      2.     Federal Review of State Court Decision

     Petitioner presented this claim as his sixth ground for relief in his Rule 3.850 motion (Doc. 11, Ex. S at 9-10).  The state court found that the edited videotape was properly authenticated by a witness for the State, and that the proper foundation was established to permit admission of the edited video into evidence (*id*. at 23).  Furthermore, the state court found that Petitioner offered no factual support for his contention that the complete video would have established his innocence, thus, Petitioner failed to establish he was prejudiced as a result of counsel's failure to move to suppress the edited video (*id*.).

     Initially, this court notes that the trial transcript shows that defense counsel objected to admission of the video during trial on the grounds that it was not sufficiently authenticated, and the video was not an accurate and fair depiction of what happened the night of the robbery (Doc. 11, Ex. C at 51).  The trial court overruled defense counsel's objection (*id*.).  Thus, counsel made the substantive objection that Petitioner asserts counsel failed to make, albeit during trial instead of before trial.  Furthermore, Petitioner does not allege how the edited version of the video was

misleading, or otherwise provide factual support for this assertion.  Therefore, Petitioner failed to demonstrate that defense counsel acted unreasonably with regard to the substance of his objection to the video.  Moreover, Petitioner failed to demonstrate that he was prejudiced by counsel's alleged error as Petitioner failed to show a reasonable probability that the trial court would have granted a pre-trial motion to suppress and, if the motion had been granted, a reasonable probability that he would not have been convicted if the jury had seen the complete video instead of the edited version. Therefore, the state court's denial of this claim was not contrary to or an unreasonable application of <u>Strickland</u>.

      D.    <u>Ground six:  Ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments.</u>

Petitioner claims that his trial counsel failed to seek pre-trial suppression of an audiotape of a 911 emergency call on the ground that the date and time of the tape, October 27, 1997, was inconsistent with the other evidence presented by the State showing that the robbery occurred on September 25, 1997 (Doc. 1 at 7).  Petitioner further claims that defense counsel should have introduced evidence that Petitioner was incarcerated on October 27, 1997, the date of the 911 call, to show that he could not have committed the robbery described in the 911 tape (*id*. at 6).

      1.    Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel was set forth *supra*.

      2.    Federal Review of State Court Decision

Petitioner presented this claim to the state court as his seventh ground for relief in his Rule 3.850 motion (Doc. 11, Ex. S at 10-11).  The state court denied Petitioner's claim on the ground that Petitioner failed to demonstrate how any purported variance between the date and time of the 911 tape and the other evidence introduced by the State prejudiced the outcome of the trial, "particularly where the date and time on the tape correspond to the date and time the State alleged Defendant committed his criminal offense" (*id*. at 23-24).

The state court's conclusion is based upon an unreasonable determination of the facts as the date and time on the 911 tape, October 27, 1997, did <u>not</u> correspond to the date in the charging document or the evidence offered by the State regarding the date of the robbery Petitioner was

accused of committing, September 25, 1997.  Therefore, the state court decision is not entitled to

deference under § 2254, and this court must review the claim de novo.

Upon review of the record, this court concludes that Petitioner has failed to demonstrate that

he was prejudice by counsel's failure to seek suppression of the 911 tape as it was of little

evidentiary value and the other evidence presented by the State overwhelmingly proved Petitioner's

guilt.  Under Florida law in effect in 1997, robbery was defined as follows:

> . . . the taking of money or other property which may be the subject of larceny from
> the person or custody of another, with intent to either permanently or temporarily
> deprive the person or the owner of the money or other property, when in the course
> of the taking there is the use of force, violence, assault, or putting in fear.

Fla. Stat. § 812.13(1) (1992).  At trial, the State's first witness was Lymwel Shepherd, who was

working as a clerk in the early morning hours of September 25, 1997, at the Tom Thumb store

located at the intersection of Navy Boulevard and Jackson (Doc. 11, Ex. C at 45-46).  Mr. Shepherd

testified that at approximately 2:00 a.m., a truck pulled up to a gas pump, and one of the occupants

remained at the gas pump while the other occupant entered the store and asked to use the bathroom

(*id*. at 47).  Upon exiting the bathroom, the man approached Mr. Shepherd and said that he left his

wallet in the bathroom (*id*.).  The man then robbed Mr. Shepherd (*id*.).  Mr. Shepherd testified that

the store had a video camera; that he viewed the video of the robbery; and that the video was a fair

and accurate representation of the events that occurred the morning he was robbed (*id*.).  As the

prosecutor published the videotape to the jury, Mr. Shepherd confirmed that it depicted him calling

the police, locking the front door, and observing a police officer at the door following the robbery

(*id*. at 52).

Mr. Shepherd testified that during the robbery he was afraid that the robber had a gun and

would shoot and kill him (*id*. at 52-53).  He testified that he called 911, that he listened to an

audiotape of the 911 call, and that the audiotape was a fair and accurate representation of the call

(*id*. at 53).  The audiotape contained the following conversation:

> UNIDENTIFIED SPEAKER: Escambia County Sheriff's Department.  The
> following is a recording of case number 97S024491.  Tom Thumb at 600 North New
> Warrington Road.  Recorded October 27, 1997 at 1236 hours.
> 911 OPERATOR:       Sheriff's 911.
> MR. SHEPHERD:       Hi.  I just got robbed on Navy Boulevard.
> 911 OPERATOR:       Are you the clerk?

| | |
|---|---|
| MR. SHEPHERD: | Huh? |
| 911 OPERATOR: | Are you the clerk? |
| MR. SHEPHERD: | Yeah. |
| 911 OPERATOR: | Did he have a gun or knife or anything? |
| MR. SHEPHERD: | It looked like he had a gun. |
| 911 OPERATOR: | I got the clerk.  Let me have the call.  Your name? |

Your name?

Lymwel Shepherd.

| | |
|---|---|
| 911 OPERATOR: | What's the first name? |
| MR. SHEPHERD: | Lymwel, L-Y-M-W-E-L. |
| 911 OPERATOR: | Was it a white guy or black guy? |
| MR. SHEPHERD: | It was a white guy. |
| 911 OPERATOR: | How old was he? |
| MR. SHEPHERD: | He looked about 43.  I have his friend right here in this |

store.

| | |
|---|---|
| 911 OPERATOR: | You got his accomplice in there? |
| MR. SHEPHERD: | No, his friend. |
| 911 OPERATOR: | A friend of his?  Lymwel, answer my question.  So |

he's a white male.  You said he's about 43.  What kind of clothes did he have on?
Lymwel, talk to me.  What kind of clothes did he have on?

| | |
|---|---|
| MR. SHEPHERD: | He had a gray shirt with--he had gray shorts and I |

forgot his--

| | |
|---|---|
| 911 OPERATOR: | How tall was he? |
| MR. SHEPHERD: | he was about five-- |
| 911 OPERATOR: | Look at your door.  Tell me how tall he was going out |

the door.

| | |
|---|---|
| MR. SHEPHERD: | Um-- |
| 911 OPERATOR: | Lymwel?  The phone went dead and I'm trying to call |

back.

| | |
|---|---|
| MR. SHEPHERD: | Hello? |
| 911 OPERATOR: | Lymwel? |
| MR. SHEPHERD: | Yeah, the phone just hung up. |
| 911 OPERATOR: | That's fine.  Could you tell me what kind of clothes he |

had on?

| | |
|---|---|
| MR. SHEPHERD: | He had these gray shorts-- |
| 911 OPERATOR: | Right. |
| MR. SHEPHERD: | --and I don't know.  I'm in shock. |
| 911 OPERATOR: | Okay.  That's fine.  Did you say he had a gun or not? |
| MR. SHEPHERD: | Yeah.  It looked like he had a gun but he had it under |

his shirt.

| | |
|---|---|
| 911 OPERATOR: | Did he tell you he had a gun? |
| MR. SHEPHERD: | Yeah, he told me-- |
| 911 OPERATOR: | Did he show it to you? |

| | |
|---|---|
| MR. SHEPHERD: | No. |
| 911 OPERATOR: | Okay.  Look at your door, Lymwel, and tell me how tall he was. |
| MR. SHEPHERD: | He was--he was about 5'7" or 5'8". |
| 911 OPERATOR: | About how much did he weigh, do you think? |
| MR. SHEPHERD: | About at least 185. |
| 911 OPERATOR: | Was he skinny, hefty? |
| MR. SHEPHERD: | He was big, like muscles. |
| 911 OPERATOR: | Lots of muscles? |
| MR. SHEPHERD: | Yeah. |
| 911 OPERATOR: | Look like maybe he worked out or something, that kind? |
| MR. SHEPHERD: | Yeah. |
| 911 OPERATOR: | Okay.  When he left, Lymwel, which way did he go? |
| MR. SHEPHERD: | I'm facing the store right now.  He turned left. |
| 911 OPERATOR: | Okay.  If I'm out in the parking lot facing the store, did he run out towards New Warrington Road? |
| MR. SHEPHERD: | I have to let the officer in. |
| 911 OPERATOR: | Okay.  He's there? |
| MR. SHEPHERD: | Yeah. |
| 911 OPERATOR: | Go ahead and talk to the deputy. |
| MR. SHEPHERD: | All right. |

(*id*. at 64-68).

Mr. Shepherd further testified that he did not actually see a gun, but he thought the robber had one by the way he put his hand under his shirt and put it over the counter (*id*. at 68).  Mr. Shepherd testified that when the robber first entered the store, he asked where the bathroom was, and  he (Shepherd) told him where it was (*id*. at 68-69).  The robber used the bathroom, exited the bathroom, and then returned to the register and stated he left his wallet in the bathroom (*id*. at 69). Mr. Shepherd testified that it appeared to him that the man was robbing him, based on the way the robber put his hand under his (the robber's) shirt and then said, "Quit playing around." (*id*. at 70). Mr. Shepherd testified that he was afraid the man would shoot him if he did not give him money (*id*.).  He further testified that at first he did not give the robber all of the money because a few dollar bills were still left in the cash register, but the man pointed at the dollar bills, so Shepherd gave them to him (*id*. at 70-71).  Mr. Shepherd stated he was not sure of the amount of money that he gave the robber, but normally $50.00 was kept in the cash register (*id*. at 71).  Mr. Shepherd identified Petitioner as the man who robbed him (*id*. at 115-16).

Harold Pool, a deputy sheriff with the Escambia County Sheriff's Department, testified that he responded to the Tom Thumb store after the robbery (*id*. at 160-61). He testified that a store employee printed photographs from the store videotape from the night of the robbery (*id*. at 161). Deputy Pool testified that he showed the photographs to Mr. Harold Smith and Mr. Daniel Bell, and those men identified Petitioner as the person in the photographs (*id*. at 161-62).

The defense called two witnesses, Mr. Harold Smith and Petitioner. Mr. Smith testified that he was a friend of Petitioner's at the time of the robbery and lived approximately 3-4 blocks from him (*id*. at 100-01). Mr. Smith testified that on the evening of September 25, 1997, Petitioner came to his house and sat outside drinking beer with Mr. Smith's brother (*id* at 101-02). Mr. Smith went to bed around 10:30 or 10:45 p.m. and instructed his brother to lock his vehicle when they were through talking on the CB radio (*id*. at 102-03). Mr. Smith testified that he identified Petitioner from photographs taken from a videotape (*id*. at 108-09).

Petitioner testified that on September 25, 1997, he worked on his mother's house until approximately 8:30 or 9:00 p.m. (*id*. at 185-86). After he finished working on the house, he and three others sat in the yard and drank beer for 30 minutes to an hour (*id*. at 186). He then went to Harold Smith's house (*id*. at 187). Before he left, he took his antidepressant medication, including Desyrel, Vistaril, and Effexor (*id*. at 186-87). Petitioner testified that Mr. Smith took him and Henry Smith, Harold Smith's brother, to the store to buy more beer (*id*. at 187-88). They then went back to Harold Smith's house until approximately 1:00 or 1:30 a.m. (*id*. at 188). At that time, Daniel Bell and Theodore Moucheron arrived in Mr. Bell's truck, and Petitioner asked Mr. Bell if he would give him a ride to Mr. B's Lounge off of Jackson Street so Petitioner could visit a girl (*id*. at 188-89). Mr. Bell gave Mr. Moucheron permission to drive Petitioner there so long as Petitioner put $3.00 worth of gas in the truck (*id*. at 189). Mr. Moucheron drove to the Tom Thumb Store and pulled up to the gas tank (*id*. at 191). Mr. Moucheron said he would pump $3.00 worth of gas, and Petitioner said he would go into the store and pay for it (*id*.). Petitioner testified that he walked into the store, handed the clerk a $50.00 bill, and told the clerk to take $3.00 of gas out of the $50.00 (*id*.). Petitioner also told the clerk that he needed to use the bathroom, and the clerk directed him to the bathroom (*id*. at 191-92). Petitioner testified that he "had a buzz" from drinking, as he and two or three others had drunk over two cases of beer (*id*.). Petitioner used the bathroom and was confused

as to where his money went (*id*. at 192-93).  Petitioner walked out of the store looking for his money and did not find it, so he went back into the store and asked the clerk if he saw any money on the floor (*id*. at 193).  The clerk looked confused and responded no, so Petitioner went to the bathroom and searched (*id*.).  He then walked back to the counter and said, "Look, don't be playing with me. . . . I remember I gave you a $50 bill when I walked in the store. . . . just give me my change . . ." (*id*. at 193-94).  Petitioner testified he was holding his stomach at the time because his stomach hurt (*id*. at 193).  The clerk then opened the cash register and gave Petitioner "a bunch of ones and a couple of fives," and Petitioner left the store and walked to his girlfriend's trailer (*id*. at 194).  Petitioner denied that he robbed the clerk (*id*.).

The State called Theodore Moucheron as a rebuttal witness.  Mr. Moucheron testified that he was standing near his truck when Petitioner exited the Tom Thumb store (*id*. at 247).  He testified that Petitioner was running, not walking, from the store (*id*.).

In light of this evidence, Petitioner has failed to demonstrate a reasonable probability that he would not have been convicted of robbery if the jury had not heard the 911 tape or if defense counsel had argued to the jury that the date stated in the audiotape was nearly one month after the robbery, when Petitioner was being detained in jail.  Initially, the jury heard the October date on the tape, therefore, they were aware of the difference in the dates.  Additionally, the evidentiary value of the tape was minimal.  Its only value was to provide the clerk's description of the robbery immediately after it occurred, including the general physical characteristics of the robber, a description of the robber's clothing, that it appeared that the robber had a gun, and the robber told the clerk that he had a gun.  This was of little evidentiary value in light of the clerk's in-court identification of Petitioner as the robber, the identifications of Petitioner as the man in the store's videotape of the robbery, Mr. Moucheron's testimony that Petitioner ran away from the store, and Petitioner's admission that he was in the store at the approximate time of the robbery, that he had a verbal exchange with the clerk concerning money, and that he left the store with a "wad" of bills.  Therefore, Petitioner has failed to satisfy the prejudice prong on the <u>Strickland</u> standard.  Accordingly, he is not entitled to federal habeas relief on this claim.

    E.    <u>Ground seven:  Ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments.</u>

Petitioner next claims that his trial counsel was ineffective for failing to file a motion to sever the offenses (Doc. 1 at 8-9). Petitioner argues that the charges should have been tried separately because the offenses occurred several months apart, and trying the counts together was prejudicial because the letter that was the subject of the threatening to retaliate against a witness charge "bolstered" the robbery charge and shifted the burden of proof from the State to him (*id*. at 9).

        1.      Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel was set forth *supra*.

        2.      Federal Review of State Court Decision

Petitioner presented this claim as his ninth ground for relief in his Rule 3.850 motion (Doc. 11, Ex. S at 11-12). The state court concluded that based upon the nature of the offenses and the manner in which they were committed, the trial court would not have granted a motion to sever; therefore, defense counsel was not ineffective for failing to file a futile motion (*id*. at 24).

Rule 3.150 of the Florida Rules of Criminal Procedure provides, in relevant part:

(a) Joinder of Offenses. Two or more offenses that are triable in the same court may be charged in the same indictment or information in a separate count for each offense, when the offenses, whether felonies or misdemeanors, or both, are based on the same act or transaction or on 2 or more connected acts or transactions.

Fla. R. Crim. P. 3.150.

Rule 3.152(a) provides:

**(a) Severance of Offenses.**

  (1) In case 2 or more offenses are improperly charged in a single indictment or information, the defendant shall have a right to a severance of the charges upon timely motion thereof.

  (2) In case 2 or more charges of related offenses are joined in a single indictment or information, the court nevertheless shall grant a severance of charges on motion of the state or of a defendant:

      (A) before trial upon a showing that such severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
      (B) during trial, only with defendant's consent, on a showing that the severance is necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

Fla. R. Crim. P. 3.152.

In Wright v. State, the Florida Supreme Court stated:

"[T]he rules do not warrant joinder or consolidation of criminal charges based on similar but separate episodes, separated in time, which are connected only by similar circumstances and the accused's alleged guilt in both or all instances.  Courts may consider "the temporal and geographical association, the nature of the crimes, and the manner in which they were committed."  However, interests in practicality, efficiency, expense, convenience, and judicial economy, do not outweigh the defendant's right to a fair determination of guilt or innocence.

586 So. 2d 1024, 1029-30 (Fla. 1991) (quoting Garcia v. State, 568 So. 2d 896, 899 (Fla.1990) (internal citations omitted)).  "[T]he connected acts or transactions requirement of rule 3.150 means that the acts joined for trial must be considered in an episodic sense."  Garcia, 568 So. 2d at 899. Joinder is not warranted where the offenses are unrelated in terms of time or sequence.  Smithers v. State, 826 So. 2d 916, 923 (Fla. 2002) (citation omitted).  There must be a "meaningful relationship" between the charges before permitting them to be tried together.  Id. (citing Ellis v. State, 622 So. 2d 991, 999 (Fla. 1993)).

The Florida Supreme Court has recognized two general categories of cases where joinder is proper.  The first category is where the criminal acts occurred during a "'spree' interrupted by no significant period of respite."  Smithers, 826 So. 2d at 923 (citing Bundy v. State, 455 So. 2d 330, 345 (Fla. 1984); Ellis v. State, 622 So. 2d 991, 999 (Fla. 1993)).  The second category is where the crimes are "causally related to each other, even though there may have been a significant lapse of time."  Smithers, 826 So. 2d at 923 (citing Fotopoulos v. State, 208 So. 2d 784 (Fla. 1992) (holding that sufficient causal link existed to permit joinder of offenses where defendant induced woman to murder another man while defendant videotaped the shooting, then defendant used the video to blackmail the woman into hiring hit man to murder defendant's wife a month later, since one crime induced the other crime)).  However, the mere fact of a general temporal and geographic proximity has not been sufficient in itself to justify joinder except to the extent that it helps prove a proper and significant link between the crimes.  Smithers, 826 So. 2d at 923 (citation omitted).

In the instant case, Petitioner's crimes fall squarely within the second category because the robbery induced Petitioner to threaten the victim of the robbery that he would suffer retaliation if he testified at the trial of the robbery charge.  Because Petitioner has failed to show that defense counsel had a meritorious basis for filing a motion to sever, he cannot satisfy the deficient

performance prong of the <u>Strickland</u> standard.  Accordingly, the state court's denial of his claim was not contrary to or an unreasonable application of Supreme Court law.  Additionally, Petitioner has failed to show that there is a reasonable probability that he would not have been convicted of either of the charges had they been tried separately, especially in light of the fact that the trial court expressly instructed the jury that it was to consider each count separately and that merely finding Petitioner guilty of one charged offense was not to influence its verdict as to the other charged offense (*see* Doc. 11, Ex. D at 309).  Therefore, he is not entitled to relief on this claim.

  F. <u>Ground eight:  Ineffective assistance of counsel in violation of the Sixth Amendment.</u>

  Petitioner next claims that his trial counsel was ineffective for failing to file a motion for judgment of acquittal on the robbery charge on the ground that the evidence was insufficient to show loss of property or money, an essential element of the crime (Doc. 1 at 9-10).

   1. Clearly Established Supreme Court Law

  The standard for evaluating claims of ineffective assistance of counsel was set forth *supra*.

   2. Federal Review of State Court Decision

  Petitioner presented this claim as his tenth ground for relief in his Rule 3.850 motion (Doc. 11, Ex. S at 12-13).  The state court found as fact that defense counsel did move for judgment of acquittal on the robbery charge (*id*. at 25).  Furthermore, the court found as fact that the victim testified that he gave Petitioner a specified amount of money (*id*.).  Therefore, defense counsel was not ineffective for failing to argue facts which were wholly unsupported by the record (*id*.).

  Indeed, the trial transcript shows that defense counsel moved for a judgment of acquittal on both charges (Doc. 11, Ex. C at 166-78).  As to the robbery count, counsel argued that the evidence was insufficient for the jury to infer that Petitioner was guilty of any of the elements of robbery (*id*. at 167).  The motion was denied as to both counts (*id*. at 180-81).  Petitioner has failed to show that defense counsel's failure to more specifically argue the loss of valuable property element was unreasonable.  The testimony of Lymwel Shepherd, the store clerk, was sufficient to permit a rational juror to conclude beyond a reasonable doubt that Petitioner took money from Mr. Shepherd's custody.  Therefore, the state court correctly concluded that Petitioner failed to show that his counsel performed ineffectively by failing to more specifically argue the loss element.

Furthermore, in light of Mr. Shepherd's testimony, Petitioner has failed to show a reasonable probability that the motion would have been granted if defense counsel had specifically argued that the evidence was insufficient to show loss of property of value.  Because the state court decision was not contrary to or an unreasonable application of Strickland, Petitioner is not entitled to relief.

> G.      Ground nine:  The enhanced penalty imposed on Count I is unconstitutional in violation of due process of law and separation of powers clause of the Fifth, Sixth, and Fourteenth Amendments.

Petitioner's final claim is that the PRRPA enhancement imposed on the robbery count violates the separation of powers clause set forth in Article II, § 3 of the Florida Constitution (Doc. 1 at 11).  Petitioner states that he raised this claim on direct appeal, and the appellate court affirmed his conviction and sentence (see Doc. 11, Exs. E, Q).  Petitioner contends that the state court decision violates due process under the United States Constitution because the decision is contrary to the Florida Constitution (id. at 11-12).

Petitioner's claim that the PRRPA violates the Florida Constitution is not cognizable on federal habeas review.  Federal habeas relief is available to correct only constitutional injury.   28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991); Wainwright v. Goode, 464 U.S. 78, 83-84, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983).  Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief.  See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved.") (quoting Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983)).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process."  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (citation omitted).  Furthermore, the Florida Supreme Court has concluded that the PRRPA does not violate the separation of powers clause of the Florida Constitution.  See State v. Cotton, 769 So. 2d 345, 354 (Fla. 2000).  Therefore, Petitioner is not entitled to federal habeas relief on his claim that the PRRPA violates the Florida Constitution. Petitioner has asserted no other basis for concluding that the state appellate court's decision was contrary to or an unreasonable application of clearly established Supreme Court law; therefore, he is not entitled to relief.

Case No:  3:04cv290/MCR/EMT

Based upon the foregoing, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James V. Crosby, Jr. as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this 11th day of September 2006.


/s/ *Elizabeth M. Timothy*

**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**